[Cite as *State v. Anders*, 2017-Ohio-2589.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### HANCOCK COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,           CASE NO.  5-16-27

     v.

JOSHUA H. ANDERS,           O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2015 CR 0277

Judgment Affirmed

Date of Decision:   May 1, 2017

APPEARANCES:

     *Joshua M. Kin* for Appellant

     *Alex K. Treece* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Joshua H. Anders, appeals the October 5, 2016 judgment entry of the Hancock County Court of Common Pleas journalizing his conviction by a jury for one count of receiving stolen property in violation of R.C. 2913.51(A), a felony of the fourth degree, and sentencing him to serve a sixteen-month prison term. On appeal, Anders assigns as error (1) the trial court overruling his motion to suppress evidence obtained from a warrantless search, (2) the trial court's denial of his request to represent himself, (3) his claim that his conviction is based upon insufficient evidence and is against the manifest weight of the evidence, and (4) his assertion that he received ineffective assistance of counsel.

*Procedural History*

{¶2} On October 20, 2015, the Hancock County Grand Jury indicted Anders on one count of receiving stolen property in violation of R.C. 2913.51(A), a felony of the fourth degree. Specifically, the indictment alleged that Anders "did retain certain property, a 2006 Bombardier Outlander, having vehicle identification number 2BVEGCF136V000205, a motor vehicle, as defined in Ohio Revised Code 4501.01, being the property of another, one Alan B. Ferrell, the said Joshua H. Anders having reasonable cause to believe said property had been obtained through the commission of a theft offense as defined in Ohio Revised Code, Section

2913.01." (Doc. No. 1). Anders entered a plea of not guilty to the charge contained in the indictment.

{¶3} On April 6, 2016, Anders filed a motion to suppress the photographic identification of him by the victim and any evidence seized during the warrantless search of his residence and surrounding property. The State filed a response opposing Anders' motion to suppress on April 12, 2016.

{¶4} On May 23, 2016, the trial court conducted an evidentiary hearing on Anders' motion to suppress. Prior to the hearing, the parties reached an agreement with respect to the first issue raised by Anders. Specifically, the defense agreed to withdrawal its argument objecting to the use of the photograph of Anders by law enforcement in the identification process and the State agreed to stipulate to the trial court giving the instruction at trial that improper procedures were used in identifying Anders with the photograph. The matter then proceeded solely on the issue raised regarding the warrantless search of Anders' residence.

{¶5} On August 2, 2016, the trial court overruled Anders' motion to suppress finding that law enforcement's warrantless search of the property where Anders' had previously resided did not violate his Fourth Amendment rights because the landlord had told the investigating detective that she had considered the property abandoned and thus the trial court concluded that it was reasonable for the

investigating detective to believe that the landlord had the apparent authority to consent to the warrantless search of the home.

{¶6} On August 8, 2016, the trial court conducted a three-day jury trial on the matter. The jury found Anders guilty of receiving stolen property. The trial court continued sentencing pending the completion of a pre-sentence investigation report.

{¶7} On October 5, 2016, the trial court sentenced Anders to sixteen months in prison.

{¶8} Anders filed this appeal, asserting the following assignments of error.

**ASSIGNMENT OF ERROR NO. 1**

**THE TRIAL COURT ERRED BY OVERRULING ANDERS' MOTION TO SUPPRESS EVIDENCE**

**ASSIGNMENT OF ERROR NO. 2**

**THE TRIAL COURT ERRED IN DENYING ANDERS' REQUEST FOR SELF-REPRESENTATION**

**ASSIGNMENT OF ERROR NO. 3**

**THE TRIAL COURT ERRED IN DENYING ANDERS' CRIM. R. 29 MOTION AND WHETHER ANDERS' CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SUPPORTED WITH SUFFICIENT EVIDENCE**

**ASSIGNMENT OF ERROR NO. 4**

**WHETHER ANDERS' RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL**

*First Assignment of Error*

{¶9} In his first assignment of error, Anders argues that the trial court erred in overruling his motion to suppress evidence obtained against him on the grounds that Detective Boutwell, the lead detective on the case, conducted an illegal warrantless search of Anders' rental home and violated Anders' Fourth Amendment right to be free from unreasonable searches and seizures. To the contrary, the State contends that the circumstances existing at the time of the search supported a reasonable belief by Detective Boutwell that the rental property had been abandoned and that the landlord's consent to search the home was sufficient to comply with Fourth Amendment safeguards.

*Standard of Review*

{¶10} Under Ohio law, "[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Accordingly, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v.*

*Fanning*, 1 Ohio St.3d 19, 20 (1982). Further, "[a]ccepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 (4th Dist.1997).

*Evidence Presented at the Suppression Hearing*

**{¶11}** At the hearing on Anders' motion to suppress, the State presented the testimony of Detective Boutwell with the Hancock County Sheriff's Office, who was the only witness to testify at the hearing. His testimony revealed that Deputy Crouch also with the Hancock County Sheriff's Office had obtained a narrative from the victim, Alan Ferrell, reporting that his ATV had been stolen from the gun club he owned on Delaware Township Road 186 sometime between August 3 and August 5, 2015. Mr. Ferrell gave a general description of the ATV as a 2006 Outlander Bombardier, four-wheel vehicle, factory yellow in color.

**{¶12}** On August 25, 2015, Mr. Ferrell followed up with Deputy Crouch and reported that he had seen an ATV for sale on Craigslist. The listing stated that the ATV for sale was a Bombardier Outlander and black in color. Mr. Ferrell relayed that he had contacted the listed seller and made arrangements to meet at 408/410 Washington Street in Findlay, which was a duplex. Mr. Ferrell met with an individual, whom he described as a Caucasian male in his twenties with several tattoos on his face, arms, and wrists. This individual showed Mr. Ferrell the ATV

for sale in the garage. Mr. Ferrell identified the same aftermarket modifications on the ATV offered for sale as the ones he had made to his stolen ATV. Mr. Ferrell also observed the factory yellow color in the seams and recognized the decals under the black paint job.

{¶13} The case was handed over to Detective Boutwell the next morning on August 26, 2015. Detective Boutwell contacted Mr. Ferrell to verify his narrative regarding the Craigslist ATV and then obtained the Craigslist listing, which was posted on August 17, 2015. Detective Boutwell went to the 408/410 Washington Street address in Findlay to confirm that it was the same location where Mr. Ferrell had seen the ATV for sale. Detective Boutwell also learned from police booking information that Anders had been associated with the 408/410 Washington Street address. Detective Boutwell obtained a search warrant for the duplex at 408/410 Washington Street.

{¶14} After executing the search warrant, Detective Boutwell entered the garage, which he described to be so packed with items that he could hardly move. He did not find an ATV, but noticed an open space the approximate size of an ATV amid the clutter, and observed what looked to be skid marks consistent with an ATV on the concrete floor. Detective Boutwell also encountered Anders' sister and her boyfriend at the residence who confirmed that Anders and his girlfriend, Andrea Spitnale, had stayed at the residence on August 25, 2015, the date Ferrell examined

the ATV for sale in the garage.[1]

{¶15} On August 28, 2015, Ms. Spitnale made contact with Detective Boutwell and indicated that she lived with Anders in a residence at 505 S. Davis Street in Forest, Ohio.

{¶16} On August 31, 2015, a Monday, Detective Boutwell went to the S. Davis Street address to speak with Ms. Spitnale and Anders. However, the property appeared to be abandoned or vacant when he arrived. Specifically, he observed a broken window, open windows with no screens, several items and debris in the front yard, including a broken television, and no cars in the driveway.

{¶17} Detective Boutwell talked to several neighbors, who observed an ATV on the property during the beginning of August in the backyard and in the garage of the 505 S. Davis Street property. Two neighbors recognized a photo of Anders and confirmed that he and Ms. Spitnale had lived at the 505 S. Davis Street residence. One neighbor stated that he had helped Anders work on an ATV and identified it as the same one that was in the Craigslist photos. Another neighbor recognized the ATV from the Craigslist photos as the same one parked on the property. The neighbor also reported that the couple was in the process of moving out a few days prior and she had observed them loading a U-Haul trailer full of personal items.

---

[1] The record reflects that Anders' paramour, Andrea, was associated with three last names during the case proceedings, Bender, Spitnale, and then eventually Anders when she married the defendant prior to the trial. For clarity reasons, we will refer to Andrea with the last name Spitnale.

{¶18} Detective Boutwell then contacted the owner of the property, Patti Walters. He met with her that evening at the 505 S. Davis Street residence. Ms. Walters confirmed that at one point in time she had a land-contract with Ms. Spitnale and her former husband, who was not Anders. She relayed to Detective Boutwell that the rent had not been paid in some time and showed him an eviction notice that she had posted on the door of the rental home dated July 26, 2015. According to Ms. Walters, Ms. Spitnale called her acknowledging the eviction notice and asked for two more weeks before leaving. Ms. Walters gave her one week after the date of the eviction notice to vacate the property. Ms. Walters also indicated that the village had turned off the water to the home due to nonpayment.

{¶19} Detective Boutwell looked through the window and saw garbage bags, pieces of furniture, and clothes scattered on the floor inside. Ms. Walters opined that she considered the property abandoned due to the fact that there was no ongoing lease and an eviction notice had been served. Ms. Walters, as the owner of the property, then signed a waiver to consent to the search by Detective Boutwell.

{¶20} Upon entering the home, Detective Boutwell noticed that it appeared as if someone had moved out in a hurry. There were broken pieces of furniture, bags of clothing, and debris scattered throughout the home. There were also many bottles of water in the bathroom indicating that the previous occupants had been using them to flush the toilet. There was chicken in a skillet on the stove that looked

as if it had been there for three or four days. Detective Boutwell also found documents with Anders' and Ms. Spitnale's names in the mailbox, the home, and the garage.

{¶21} When he entered the garage, Detective Boutwell observed a workbench sprayed with black paint. Next to the workbench was a black cap which appeared to be that from an aerosol spray paint can. He then noticed black spray paint on the garage floor in a silhouette consistent with the shape of a four-wheel ATV. While there was no garage door, he found a blue tarp lying to the side on the ground that neighbors had observed hanging on the doorframe so that no one could see in. At that point, Detective Boutwell believed that he had obtained probable cause to believe that Anders had been involved in a theft or receiving stolen property offense related to Mr. Ferrell's ATV.

{¶22} In its judgment entry overruling Anders' motion to suppress, the trial court found that "it was reasonable for Detective Boutwell to believe that Ms. Walters had the apparent authority to consent to the search of 505 S. Davis Street Forest, Ohio. Because it was reasonable to believe Ms. Walters had the apparent authority to consent to the search based on the defendant's abandonment of the rental property, the search did not violate Defendant Anders' Fourth Amendment rights." (Doc. No. 95 at 10).

{¶23} On appeal, Anders claims that the trial court erred in concluding that it was reasonable for Detective Boutwell to believe that Ms. Walters had the apparent authority to consent to the search. Specifically, Anders claims that the evidence at the suppression hearing failed to establish that Anders and Ms. Spitnale had abandoned the rental home due to the fact that a forcible entry and detainer proceeding had not been initiated by Ms. Walters and that some of the couples' personal effects such as bags of clothing still remained in the home. Thus, Anders argues that he still maintained an expectation of privacy in the 505 S. Davis Street residence.

{¶24} In general, "[t]he Fourth Amendment protects individuals from unreasonable search and seizure by the government." *State v. Corbin*, 194 Ohio App.3d 720, 2011-Ohio-3491, ¶ 24 (6th Dist.). In order to have standing to challenge a violation, however, "an individual must have a legitimate expectation of privacy in the subject matter of the search." *Id*., citing *Minnesota v. Olson*, 495 U.S. 91, 95-96 (1990). It has been held that "[a] legitimate expectation of privacy is 'one that society is prepared to recognize as reasonable,' " and "[t]he burden is on the party asserting the motion to provide sufficient evidence to prove grounds for standing." *Corbin* at ¶ 24, quoting *Rakas v. Illinois*, 439 U.S. 128, 143-44 (1978).

{¶25} "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to

consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Such consent may be obtained from "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *U.S. v. Matlock*, 415 U.S. 164, 171 (1974).

**{¶26}** It is not necessary that the consenting third party have actual authority over the premises. *State v. Portman*, 2d Dist. Clark No. 2013-CA-68, 2014-Ohio-4343, ¶ 13, citing *United States v. Ayoub*, 498 F.3d 532, 537 (6th Cir.2007). Even where the consenting third party lacked actual authority to consent to a search, the consent is still valid if the police reasonably believed that the person had authority to consent to the search. *Illinois v. Rodriguez*, 497 U.S. 177, 188-189 (1990). Whether sufficient apparent authority exists must " 'be judged against an objective standard: would the facts available to the officer at the moment * * * "warrant a man of reasonable caution in the belief" ' that the consenting party had authority over the premises?" *Id*. at 188, quoting *Terry v. Ohio*, 392 U.S. 1, 21–22 (1968); *State v. Corbin*, 194 Ohio App.3d 720, 2011-Ohio-3491, ¶ 28 (6th Dist.).

**{¶27}** Based on the evidence presented at the suppression hearing, we conclude that the facts available to Detective Boutwell were sufficient to warrant a reasonable belief that Ms. Walters had apparent authority to consent to a search of the premises. Detective Boutwell had had previous conversations with neighbors who observed Anders and Ms. Spitnale hurriedly moving their personal belongings

out of the home and into a trailer. He also learned from Ms. Walters, the property owner and landlord of the premises, that an eviction notice had been posted on the door of the home a month earlier and that Ms. Spitnale had acknowledged receipt of the notice and was given a week by Ms. Walters to vacate the home.

{¶28} Detective Boutwell also observed broken and open windows and a large amount of trash and debris in the front yard, which indicated that the occupants were no longer living there. When Detective Boutwell spoke to Ms. Walters on August 31, 2015, she informed him that she considered the property abandoned. Based on these circumstances, Detective Boutwell could have reasonably believed that the home had been abandoned and that Ms. Walters had the authority to consent to his entry into the home. [2]

{¶29} Accordingly, we find that the trial court did not err in overruling Anders' motion to suppress the evidence found at the 505 S. Davis Street residence. The first assignment of error is overruled.

{¶30} For ease of discussion, we elect to address the second and third assignments of error out of order.

*Third Assignment of Error*

---

[2] Notably, Anders has failed to direct us to any authority supporting his contention on appeal that the lack of an FED action filed by the landlord somehow obviated the legitimacy of her authority to consent to a search of the premises as the property owner or undermined the trial court's credibility determination of Detective Boutwell's testimony at the suppression hearing. Moreover, we do not find this assertion dispositive given the circumstances outlined at the suppression hearing supporting Detective Boutwell's reasonable belief that the home was abandoned and that Ms. Walters had the apparent authority to consent to the search of the residence.

{¶31} In his third assignment of error, Anders claims that the trial court erred in overruling his Crim.R. 29 motion for acquittal. Specifically, Anders asserts that his conviction for receiving stolen property is not supported by sufficient evidence and is against the manifest weight of the evidence.

*Standard of Review*

{¶32} An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard used to review a sufficiency of the evidence claim. *See State v. Carter*, 72 Ohio St.3d 545, 553, 1995-Ohio-104. "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386. Thus, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶33} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v.*

*Thompkins*, 78 Ohio St.3d 380, 387 (1997). Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id*.

{¶34} In the instant case, Anders was convicted of receiving stolen property, in violation of R.C. § 2913.51(A), which reads: "(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."

*Evidence Supporting Anders' Conviction*

{¶35} The following evidence was adduced at trial. The prosecution presented the testimony of Alan Ferrell, the victim in this case and the owner of the stolen ATV. Mr. Ferrell is employed as a service manager at Ryder Truck Rental and was a mechanic there for 18 years. He owns the Broken Bird gun club in Delaware township in Hancock County, near Forest. In 2012, Mr. Ferrell purchased a yellow 2006 Bombardier Outlander four-wheel drive ATV with a 400cc engine for mowing, spraying, and to clean up brush on the gun club property.[3] He stored the ATV in the garage attached to the gun club's main building, which had been a residence prior to 1971.

---

[3] The title to the ATV establishing Mr. Ferrell's ownership was admitted as an exhibit at trial.

{¶36} On August 5, 2015, Mr. Ferrell received a phone call from one of the gun club members informing him that someone had broken into the garage and that items may be missing. Mr. Ferrell recalled that he was last on the property the previous Sunday, August 3, 2015. He left work and arrived to the gun club to find that his ATV had been stolen. Mr. Ferrell described the ATV in detail. He explained that being equipped with the skills of a mechanic he had made several unique aftermarket modifications to the ATV, which were not factory standard or typically found on an ATV of this type and that made his ATV easily identifiable.

{¶37} In particular, Mr. Ferrell had installed a receiver hitch so that he could pull his mower. He also installed a winch on the front of the four wheeler. He explained that he bought a bracket and mount for the winch and attached a relay to control the winch on the rear with a bracket that he fashioned himself from several different parts. He then used some wiring from a truck on the relay that he had on hand. He stated that this is significant because a typical professional installing the relay would not have used such heavy wiring. He also installed the control for the winch on the left handlebar. Mr. Ferrell noted that the winch was set up to have a rope on it. He bought an orange poly rope about 5/16th of an inch in diameter from Cabela's and put it on the winch. In addition to the modifications, Mr. Ferrell had also twice repaired the shifter handle by welding a rod to the side of the handle and painting it black.

{¶38} Mr. Ferrell reported the ATV missing to Deputy Crouch shortly after discovering the theft. He began routinely viewing listings on Ebay and Craigslist. About two weeks later, Mr. Ferrell saw a black ATV similar to his for sale on a Craigslist listing posted on August 17, 2015. From the photos in the listing, he noticed the orange rope on the front of the winch and a recoil starter, which indicated to him that it was a 400cc engine, and not a 800cc engine as stated in the listing.[4]

{¶39} Mr. Ferrell arranged to meet with the seller, who seemed anxious to sell the vehicle, and gave him an address of 411 Washington Street in Findlay. He initially could not find the address so he called the seller who informed him that the address was actually 408 Washington Street. Mr. Ferrell observed the seller, whom he identified as Anders in the courtroom, walking out from between two houses in a hooded sweatshirt and on the cell phone. Anders told Mr. Ferrell to drive down the alley on the back side of the property. There, Anders directed Mr. Ferrell to a small building where the four wheeler was sitting outside.

{¶40} Mr. Ferrell stated that the ATV was the same as the one depicted on Craigslist. Mr. Ferrell recalled Anders' explaining that he did not have a title to the ATV. Anders stated that the ATV belonged to his father-in-law who gave it to him to use. Anders claimed to be selling the ATV because he no longer had anywhere

---

[4] The photos from the Craigslist posting were admitted as exhibits. The photos depict black paint overspray on one of the headlights, an orange rope on the winch, and yellow paint in the seams and on the side where the black paint had been scratched off.

to ride it. Mr. Ferrell immediately noticed that the ATV looked like someone had painted it black. He could see some overspray of black paint on the headlights and yellow paint in between the seams. He noted that the body paint was a glossy black which grabbed his attention because it was a different color than the original racks on the ATV, which were a flat black.

{¶41} Even though the Craigslist listing stated the ATV was an 800cc engine, Mr. Ferrell knew by looking at it that the ATV had a 400cc engine because it had one cylinder. He was unable to find the VIN number on the ATV because the sticker was either removed or painted over. He also observed that the rubber on the tires had been shredded as if it had been dragged down the road. He was able to determine that it was his ATV by the welded shifter handle, the winch that had the orange rope, and the heavy truck wire he had used on the relay. Mr. Ferrell recalled Anders starting the ATV with a key, but that it was not drivable because the clutch had been damaged. He testified that he was "one hundred percent" confident the vehicle offered for sale by Anders was his stolen ATV and drove to the Hancock County Sheriff's Office, which was a short distance from the Washington Street address, to make a report. (Doc. No. 143 at 221).

{¶42} The State also called Deputy Crouch and Detective Boutwell as witnesses who both offered testimony consistent with the evidence established during the hearing on Anders' motion to suppress. Detective Crouch described

-18-

evidence of the forced entry into the gun club's garage when he first arrived to obtain a report regarding Mr. Ferrell's stolen ATV. He observed that the windows on the garage were broken and he could tell that entry was gained from the outside by the amount of glass on the interior garage floor.

{¶43} Detective Boutwell provided more detail at trial regarding his observations upon entering the residence at 505 S. Davis Street after obtaining consent to search the home from the property owner. In addition to finding the black cap consistent with that from an aerosol spray paint can in the garage, seeing black paint on the workbench and on the garage floor in the outline of an object the size of an ATV, Detective Boutwell also discovered that someone had written in black paint all over the walls inside the home. Detective Boutwell took photographs of the black paint and related items in the garage, which were admitted as exhibits.

{¶44} Detective Boutwell also spoke to three neighbors residing in close proximity to the 505 S. Davis Street property. He spoke to Ann Gessner who recognized Anders and Ms. Spitnale from photographs. Ms. Gessner recalled seeing a dark colored ATV on the property in the backyard during the beginning of August. Ms. Gessner also observed Anders and Ms. Spitnale, a few days prior to her speaking to Detective Boutwell, moving their personal belongings in a very hurried fashion, dropping items and throwing them in a U-Haul trailer. Another neighbor Dorothy Vigneron observed a dark colored ATV parked on the 505 S. Davis Street

property and noticed an individual working on it. Roger Larrabee, the third neighbor, also remembered a dark colored ATV being on the property. He recalled assisting Anders in taking the clutch spring out. Mr. Larrabee witnessed Anders driving the ATV on the street and it becoming disabled. Ms. Spitnale had borrowed tools from him to try to fix the ATV. Mr. Larrabee also recognized the ATV in the Craigslist photos.

**{¶45}** In addition to talking to the neighbors who had seen Anders with an ATV at the 505 S. Davis Street property and who had also observed Anders and Ms. Spitnale moving out of the home, Detective Boutwell also spoke to an employee at a U-Haul rental office, who indicated that Anders had rented trailers from him. Daniel Grimm, the U-Haul rental dispatcher, was called to the stand to testify in the State's case-in-chief. Mr. Grimm discussed the rental agreements Anders had signed and the documents were admitted as exhibits. He explained that individuals renting U-Haul equipment are required to show a photo ID at the time of rental. He stated that Anders rented from him twice in August 2015. In the first instance, Anders rented a 5'8" covered trailer on August 12, 2015, which was returned the next day. In the second instance, Anders rented a 5'9" ramp trailer from him on August 26, 2015, which Anders also returned the next day.

**{¶46}** The State also presented the testimony of Patti Walters, the property owner of the 505 S. Davis Street home. Ms. Walters stated that she purchased the

home in 2009 and lived there until she entered into a land contract for the sale of the home with Andrea Spitnale in September of 2014. However, she explained that Ms. Spitnale did not complete the land contract because she stopped making payments. Specifically, she recalled that the payments started to become irregular after the first three months of the land contract and she had had several phone conversations with Ms. Spitnale about the nonpayment of rent. Finally, she posted a three-day eviction notice on the door of the home in July of 2015. Ms. Walters described the condition of the home after Anders and Ms. Spitnale had vacated. She recalled a significant amount of damage, which consisted of a broken front bay window and a bullet hole or bb gun hole in the bathroom window. She also found black paint smeared all over the kitchen cupboards, the marble countertops, the hardwood floors, and there were holes all over the dry wall and obscenities written on the walls.

{¶47} The defense presented the testimony of two neighbors who could not recall a specific date they saw the ATV at the 505 S. Davis Property, but instead gave a range of sometime in July or the beginning of August 2015. Ms. Spitnale also testified on Anders' behalf. Ms. Spitnale stated that she purchased an 800cc engine ATV around July 29, 2015 from Craigslist for $800 cash from an individual she generally described as "probably in his 20's, country boy, skinny, tall, drove [a red] truck." (Doc. No. 144 at 356-57). She recalled that the ATV was green and yellow. She and Anders decided to sell it and recoup their money after the clutch

spring broke, but they thought they could get more money for it if they spray painted it black to cover the chipped paint.

{¶48} She confirmed that she and Anders took the ATV to Anders' sister's home in Findlay because it had a secure garage. She was able specifically to recall Anders meeting with a man named "Alan Ferrell" about the ATV at the Washington Street duplex. (Doc. No. 144 at 362). She remembered Anders telling Mr. Ferrell the story that the ATV had belonged to her father. She explained that they lied about the ownership history of the ATV because they did not want a potential buyer to think they were just selling it to get their money back. Ms. Spitnale claimed that someone from Michigan "probably in his early 20's wearing a cutoff T-shirt, just a country boy with a big green truck and trailer" purchased the ATV for $1,700 a day or two after Mr. Ferrell looked at it. (Doc. No. 144 at 364).

{¶49} On appeal, Anders claims his conviction is based upon insufficient, "sparse evidence" and essentially quarrels with the circumstantial nature of the evidence supporting his conviction. It is well-settled under Ohio law that a defendant may be convicted solely on the basis of circumstantial evidence. *State v. Nicely*, 39 Ohio St.3d 147, 151 (1988). "Circumstantial evidence is not less probative than direct evidence, and, in some instances, is even more reliable." *Id.*

{¶50} Anders was charged with one count of receiving stolen property in violation of R.C. 2913.51(A), (C). To prove this charge, the State had to present

evidence that Anders (1) received, retained, or disposed of the property of another (2) while knowing or having reasonable cause to believe (3) that the property had been stolen.

**{¶51}** Mr. Ferrell testified that his ATV was stolen from his property located five miles from where Anders was residing at 505 S. Davis Street. Deputy Crouch's testimony corroborated Mr. Ferrell's claim that the ATV was obtained by a forcible entry into the garage. Not long after, Mr. Ferrell saw a Craigslist posting selling an "black" ATV. From the photos in the posting, Mr. Ferrell identified specific aftermarket modifications that he had made to the ATV, as well as what appeared to be yellow paint in the seams not covered by the black paint and evidence that the clutch had been damaged. Mr. Ferrell met with Anders regarding the Craigslist posting and examined the ATV at the Washington Street residence in Findlay where Anders' sister lived. Mr. Ferrell was able to better view the specific modifications that he had made to the ATV and confirm that the vehicle was his ATV.

**{¶52}** After Detective Boutwell made contact with Anders' sister and obtained a search warrant for the Washington Street home, Anders' girlfriend Ms. Spitnale contacted Detective Boutwell and gave him the 505 S. Davis Street address as the place where she and Anders resided. Detective Boutwell later arrived to the address to find that Anders and Ms. Spitnale had moved from the home in a hurry. There was evidence that a large object had been sprayed painted black in the garage.

There were also eyewitness accounts obtained by Detective Boutwell placing the ATV at the 505 S. Davis Street property in early August. In addition, the rental agreements from the U-Haul dealership confirmed that Anders had rented a trailer on August 12, 2015 sometime after the ATV was reported stolen and before it appeared on Craigslist and at his sister's home for sale, and rented another trailer the day after Mr. Ferrell observed the ATV at the Washington Street home. Viewing the evidence in a light most favorable to the State, the evidence is sufficient to support the charge of receiving stolen property.

{¶53} Turning to Anders' argument that his conviction is against the manifest weight of the evidence, we note that it is apparent from the evidence presented by the defense at trial that Anders did not deny that he was in possession of an ATV during the relevant timeframe of this case that he and Ms. Spitnale had painted black and sold on Craigslist. Rather, Anders' primary contention at trial was that the ATV was a different vehicle and was not Mr. Ferrell's stolen ATV. Anders presented the testimony of two of the same neighbors interviewed by Detective Boutwell who lived near the 505 S. Davis Street property. These neighbors were unsure of the exact dates they saw the ATV at the 505 Davis Street property but instead gave an estimated time frame of late July 2015 to sometime in August. While Anders contends that this testimony supports Ms. Spitnale's account of purchasing an ATV in late July 2015, this evidence also supports the State's

assertion that the ATV seen at Anders' residence at the time was the same one stolen from the nearby gun club in early August 2015.

{¶54} Moreover, on cross-examination the prosecutor sought to discredit Ms. Spitnale's account describing how she and Anders obtained the ATV by questioning her reasoning for spending $800 on an ATV when she admitted that she was unemployed and could not afford to pay rent or the utilities for the home where she and her young child lived with Anders. She was also unable to specifically recall basic features of the ATV—i.e., the number of gears or the type of wheels—on the ATV, and instead claimed that she did not "know all about ATVs." (Doc. No. 144 at 371). However, when asked how she adamantly knew the ATV she sold was an 800cc engine, and not a 400cc engine like Mr. Ferrell's, she asserted that "I have had a lot [of ATVs] in the past, and I know what the sizes are at least." (*Id.*).

{¶55} In evaluating a manifest-weight claim, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). In finding Anders guilty of receiving stolen property,

it is clear the jury concluded that Ms. Spitnale's testimony regarding the acquisition of the ATV was not credible.

**{¶56}** Anders also directs our attention to the fact that Mr. Ferrell revealed on cross-examination that the key to his ATV was not stolen and remained in a lockbox in the gun club's garage and to the fact that Mr. Ferrell testified that when he responded to Anders' Craigslist posting Anders started the ATV with a key. Anders disputes the jury's determination to not give these facts a great amount of weight. However, we note that Mr. Ferrell also testified that when he viewed the ATV at the Washington Street duplex, it was apparent that someone had tampered with the vehicle and that the rubber on the tires showed wear consistent with the ATV being dragged on the street. Moreover, Mr. Ferrell noted that while Anders started the ATV with a key, the ATV was not operable due to the damage to the clutch. In addition, one of the neighbors who spoke to Detective Boutwell verified that he assisted Anders in taking out the clutch spring. All of these facts give rise to a reasonable inference that the ATV was dragged out of the gun club's garage and the ignition was later replaced, which the jury could have permissibly concluded from the evidence presented at trial.

**{¶57}** This Court will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version. We afford the trier of fact great deference

because it is in the best position to observe the witnesses' demeanor and assess their credibility. As such, we cannot say the jury lost its way in finding Anders guilty of receiving stolen property and, therefore, we do not find that Anders' conviction is against the manifest weight of the evidence. Accordingly, the third assignment of error is overruled.

*The Second Assignment of Error*

{¶58} In his second assignment of error, Anders argues that the trial court erred by summarily denying his oral request made after the presentation of the defense's case to represent himself.

{¶59} We review for an abuse of discretion a trial court's denial of a request to proceed *pro se* asserted after voir dire was complete. *State v. Owens*, 9th Dist. Summit No. 25389, 2011-Ohio-2503, ¶ 17, citing *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, ¶ 51-53. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *State v. Kramer*, 3d Dist. Defiance No. 4-15-14, 2016-Ohio-2984, ¶ 8, citing *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

{¶60} The record reflects that after the last defense's witness, Ms. Spitnale, stepped down from the stand, Anders' counsel asked the trial court for a sidebar without the court reporter. The trial court excused the jury from the courtroom and the following was placed upon the record.

**Trial Court: Please be seated. Record should reflect the jury's exited the courtroom, the exit door is closed.**

**Record should reflect that counsel for the Defendant, in a sidebar, asked the Court to recess until tomorrow, so that the Defendant could make a decision whether or not he was going to testify. We have been discussing this now for a day and a half, and I've overruled that motion.**

**Mr. Zografides has asked for about 10 minutes to talk to his client, so we'll be back on the record here in about 10 minutes. Court will stand in recess.**

**\* \* \***

**Trial Court: Please be seated. We're back on the record in 2015-CR-277, State of Ohio verses Anders. Jury is in the jury room. Court, counsel, appropriate Court personnel, Defendant are in the courtroom. Mr. Zografides, we ready to proceed?**

**Mr. Zografides: Your Honor, I would just indicate to the Court that we do have a motion to proffer to the Court, and this is in regards to my client's request to represent himself at this point. It is his intention to give his closing to the jury, and that is his request. I—my advice is that he not do that. It's my advice that—that I continue to do the trial, and I continue to give the closing arguments. Josh wants to represent himself at this point.**

**Now, I have instructed him that, discussed this in chambers, the Court is going to overrule that. Further, Josh wants me to make this motion for him to represent himself and give the closing in front of the jury. I have advised him, doing this now outside the presence of the jury, that I don't think that's a good idea to do that, but it is his wish and his intention he would like me to make that motion in front of the jury, so that's what I am requesting on behalf of Josh to do that in front of the jury, that he represent himself, so that they know what his intentions are.**

**Trial Court: Is that a fair statement of the status of affairs, Mr. Anders?**

**Anders:  Yes, Your Honor.**

**\* \* \***

**Trial Court:  Mr. Anders, this is highly unusual.  I'm not going to permit it, because the bottom line is, I think you want to talk to the jury without being under oath and being subject to cross-examination.**

**Closing arguments are not evidence.  I'll be talking to the jury about that.  They're not to be considered as evidence.  And it's really not appropriate that these motions are made in front of the jury, so I'm not going to permit that.  Just like when we rule on the evidence, we went over to the, have a bench conference in chambers, when we talked about the Criminal Rule 29 motion that Mr. Zografides made, we didn't do that in front of the jury.  There is [sic] certain things in a trial that the jury, as factfinders, should not hear.  And one of those would be this kind of a motion.**

**So the bottom line is, Mr. Zografides is the attorney here, he's tried the case, he's prepared for the trial.**

**Just so the record is clear, you were represented initially by the Public Defender's office.  You and Mr. Sass had a parting of the ways.  I allowed Mr. Sass to withdraw.**

**Specifically at your request, we appointed Drew Wortman of Findlay, Ohio as your next attorney.  Mr. Wortman was apparently ready to try the case and that went south, so I let Mr. Wortman off and appointed Mr. Zografides.**

**\* \* \***

**Mr. Zografides came on board, because I had initially appointed Aaron Misthal of Bowling Green.  He was the next person up on the list.  Mr. Misthal suggested he had too much going on, but wondered if Mr. Zografides could take the case, if I had a problem with that, I said absolutely not, so we appointed Mr. Zografides.**

**The Court granted Mr. Zografides the ability to file a motion to suppress evidence, which was filed way after the rule, 35 days after arraignment, or seven days before trial, which ever comes first. We had the suppression hearing. The Court ruled on the suppression hearing, and we're not changing lawyers at this point, Mr. Anders. So if you want to testify, that's where we head next. If you don't want to testify, that's where we head next. I'm assuming Mr. Zografides is going to ask that certain defense exhibits be admitted. I'm going to rule on that, outside the hearing of the jury, then we're going to proceed and see where we go.**

**Yes, sir?**

**Anders: Your Honor, isn't it the right of—for me to be able to represent myself? Is that my right as a human being?**

**Trial Court: That generally is a constitutional right. I'm finding in this particular scenario you're not going to pull the plug when the going gets tough. You started with Zografides, he's your third attorney, he's going to finish the trial. * * ***

**Mr. Zografides: Your Honor, just so I make a crystal clear record, on behalf of my client, he's requesting to represent himself, and he's requesting to make that request in front of the jury, which the Court has denied that request, to do that in front of the jury as well?**

**Trial Court: That's correct.**

**Mr. Zografides: Okay.**

**Trial Court: I'm denying that request. I'm denying his opportunity, or his whatever you want to call it, to communicate directly with the jury in the context that he wants to communicate in.**

(Doc. No. 144 at 374-80).

-30-

{¶61} At the outset we note that the assertion of the right to self-representation must be clear and unequivocal. *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, ¶ 68; *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, ¶ 38. Moreover, a request for self-representation may be denied when circumstances indicate that the request is made for purposes of delay or manipulation of the trial process. *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, ¶ 72, citing *United States v. Frazier-El*, 204 F.3d 553, 560 (4th Cir.2000). A trial court may also deny a defendant's request for self-representation if it is untimely made. The Supreme Court of Ohio held that a defendant's request to represent for self-representation made just before the beginning of the trial-phase closing arguments was untimely. *State v. Neyland*, 139 Ohio St.3d 353, 2014-Ohio-1914, ¶ 76; *see also Kramer*, 2016-Ohio-2984 at ¶ 14 (finding the defendant's self-representation request during the second day of trial to be untimely).

{¶62} Here, the record supports the trial court's decision to deny Anders' request to represent himself at trial. Anders had been represented by two different attorneys prior to the appointment of counsel who ultimately defended the case during the jury trial. Anders had sufficient time to properly invoke his right to self-representation and to then prepare for trial, but he chose not to do so until after he witnessed the ardent cross-examination of the last defense witness, Ms. Spitnale.

Thus, Anders asserted his desire for self-representation after all the other witness had testified leaving just closing remarks for him to proceed *pro se*.

{¶63} Therefore, in addition to the request being untimely, we cannot say that the trial court abused its discretion in denying Anders' request to proceed *pro se* by finding that it was made in an effort to manipulate the trial court proceedings so that he could be given the opportunity to speak to the jury without being subject to cross-examination by the prosecutor. Accordingly, we do not find that the trial court erred on this basis and the second assignment of error is overruled.

### *Fourth Assignment of Error*

{¶64} In his fourth assignment of error, Anders claims that he received ineffective assistance from his trial counsel on three grounds. First, Anders asserts that his counsel was ineffective because he failed to meet with Anders prior to trial, which in turn made Anders feel uncomfortable with taking the stand to testify in his defense. Second, Anders argues that his trial counsel's failure to meet with him prior to trial resulted in a missed opportunity for trial counsel to investigate potentially mitigating evidence to present to the jury. Third, Anders claims that his trial counsel was ineffective for failing to timely object to remarks made by the prosecutor in closing argument.

{¶65} To establish his claims on appeal, Anders must show that trial counsel's performance was deficient and that counsel's deficient performance

prejudiced him. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

{¶66} Initially we note that the record is devoid of any evidence supporting Anders' contention that his counsel's conduct with him prior to trial caused him to lack the confidence to testify in his defense or prevented certain mitigating evidence from being discovered or presented at trial. A claim of ineffective assistance of trial counsel may exist where the record shows that the defendant's attorney failed to conduct a reasonable investigation into a defendant's case. *State v. Kenard*, 10th Dist. Franklin No. 15AP-766, 2016-Ohio-2811, ¶ 23, citing *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 104. However, where proof outside the record is required to support a claim of ineffective assistance of trial counsel, the claim is "purely speculative and * * * 'it is not appropriate for consideration on direct appeal.' " *Id.*, quoting *State v. Zupancic*, 9th Dist. Wayne No. 12CA0065, 2013-Ohio-3072, ¶ 4, citing *State v. Madrigal*, 87 Ohio St.3d 378, 390-91 (2000).

Therefore, we do not find that Anders has established that he received ineffective assistance of counsel based upon the first and second grounds alleged.

{¶67} Anders also claims that his trial counsel was ineffective for failing to timely object to certain remarks made by the prosecutor in closing arguments. The following are the comments upon which Anders bases his claim of ineffective assistance of counsel on appeal.

> **Prosecutor: And then Mr. Anders had reasonable cause to believe that [the ATV] had been obtained through the commission of a theft offense. Now, again, this is where circumstantial evidence is important because we can't look into the mind of a Defendant. We have no testimony as to what he was thinking or what he knew. So you sort of have to put yourself in the Defendant's position.**

(Doc. No. 145 at 401).

{¶68} Anders claims that the prosecutor's remarks referenced his decision not to testify and thereby created an improper inference of his guilt to the jury. The record reflects that before jury instructions were given, and outside of the presence of the jury, Anders' trial counsel objected to these statements and asked that his objection be made part of the record. The trial court then stated the following.

> **Trial Court: The Court is going to obviously make sure the record is complete. Mr. Zografides has done that. Mr. Zografides is making his record. He's not requesting any action by the Court. Closing argument is each side's attempt to summarize the evidence. Both of you, as far as I'm concerned, went off the reservation just a tidge [sic], but nobody objected, so the record is complete, and we'll move on from there.**

-34-

(Doc. No. 145 at 440).

{¶69} "The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel." *State v. Holloway*, 38 Ohio St.3d 239, 244 (1988). A defendant must also show that he was materially prejudiced by the failure to object. *Id*. Moreover, it is well established that the decision of trial counsel to not object falls within the realm of trial tactics and does not establish ineffective assistance of counsel.[5]

{¶70} Based on the foregoing, we find that Anders has not shown that his trial counsel's performance was deficient or that the result would have been different if his trial counsel had objected to the prosecutor's statement in front of the jury during closing argument. Therefore, we conclude that Anders has failed to demonstrate any prejudice based upon his counsel's representation and we overrule the fourth assignment of error.

{¶71} For all these reasons, the assignments of error are overruled and the judgment of conviction and sentence is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and ZIMMERMAN, J., concur.**

---

[5] *See e.g.*, *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 90, quoting *United States v. Payne*, 741 F.2d 887, 891 (C.A.7, 1984) (" 'A competent trial attorney might well eschew objecting * * * in order to minimize jury attention to the damaging material.' "); *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 42 (stating that "[a] reasonable attorney may decide not to interrupt his adversary's argument as a matter of strategy"); *State v. Clay*, 7th Dist. Mahoning No. 08MA2, 2009-Ohio-1204, ¶ 141 (stating that "[l]imiting objection during closing is a trial tactic to avoid trying to draw attention to statements").